(Decided January 5th, 1898).

---

# THE INTERNATIONAL FRATERNAL ALLIANCE *vs.* WM. FRANKLIN MALLALIEU. THE WORLD NEWSPAPER CO. *vs.* THE SAME.

*Libel—Responsibility of Instigator and of Publisher—Identity of Plaintiff with the Person Libelled.*

When a libel is published in a newspaper the proprietor thereof as well as the author or instigator of the libel is responsible in damages to the person aggrieved.

When it is shown that the libelous statement complained of emanated from one of the defendants, a corporation, and that its publication was paid for by that defendant and never repudiated, such defendant is jointly liable in an action.

A publication stated that a man named M., connected with a desig-
nated company, had made certain lying representations concerning
one of the defendants.   Plaintiff proved that his name was M., and
that he was connected with that company.   *Held*, that this evi-
dence was sufficient, in the absence of countervailing proof, to show
that the plaintiff was the person libelled.

Appeals from the Superior Court of Baltimore City
(WRIGHT, J.)   The plaintiff obtained a judgment below for
$500.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, ROBERTS and BOYD, JJ. (Oct. 12, 1897).

*Fielder C. Slingluff,* for the World Newspaper Co., and
*Kobert Ludlow Preston* (with whom was *Albert S. J. Owens*
on the brief), for the Fraternal Alliance, appellants.

*William Reynolds,* for the appellee.

ROBERTS, J., delivered the opinion of the Court.

There are nominally two appeals in this record, both of
which are taken from a judgment of the Superior Court of
Baltimore City, entered upon a verdict rendered in an action
of libel, wherein the two appellants here were held jointly
liable, the World Publishing Company for the publication
of the alleged libel and the Fraternal Alliance for having
procured the same to be written and published.   Whilst
two appeals have been taken, they are in point of fact and
in substance but one and they will be so considered.   The
appellee brought his action against the two appellants, both
of which are bodies corporate, under the Public General
Laws of the State, and also against George Hardesty and
Charles H. Unverzagt.   The libel complained of in this
case was published by the appellant, the World Newspaper
Company, and as stated in the declaration, is as follows:
" That the defendants, knowing the fact that the plaintiff was
a canvasser for insurance and a collector for the Metropoli-
tan Life Insurance Company of New York, wickedly and
maliciously did compose and publish and caused to be com-

posed and published of and concerning the plaintiff, in re-
lation to his said business, in a newspaper called 'The
World,' a certain false, scandalous, malicious and defama-
tory libel, containing among other things the following:
'The public is also warned against a man named Mallalieu
(thereby meaning the plaintiff), connected with the Metro-
politan (thereby meaning the Metropolitan Life Insurance
Company of New York), who is saying that the Interna-
tional (thereby meaning the defendant corporation, the In-
ternational Fraternal Alliance of Baltimore City) has an
unpaid claim, &c., another lie (thereby meaning that the
statement so as aforesaid attributed to the plaintiff, was a
lie).    This man says that he is employed expressly to break
up international business.    His lying methods will be
shown up if reported to the company.' "    Issue was joined
on the plea of *non cul.* and the case was tried before a jury.
The verdict being against the defendants, who are the ap-
pellants here, they have appealed from the judgment of the
Court below.

The only exceptions contained in the record relate to the
granting of the instructions asked for by the appellee and
the refusal of the Court to grant the prayers of the appel-
lants, except as hereinafter indicated.    It is not contended
that the publication complained of is not libelous *per se.*
This being so, we shall not further concern ourselves as to
the real character of the publication.    At the close of the
case of the plaintiff below (appellee here) three of the de-
fendants below, the Alliance, Hardesty and Unverzagt
offered four prayers, which substantially asked the Court to
instruct the jury that plaintiff had not offered any testimony
legally sufficient to entitle him to a verdict against them.
The first, third and fourth prayers were rejected by the
Court and the second was granted on the ground that the
plaintiff had offered no legally sufficient evidence to show
that said Hardesty and Unverzagt composed and published
the statement set out in the declaration.

We come now to the consideration of the question as to

who is liable for the publication of the alleged libel or as against whom does the responsibility attach in the procurement of such publication.   Mr. Odgers in his work on *Libel and Slander*, p. 294, says, "In cases of libel every one concerned either in writing or publishing the libel, or in causing or procuring the libel to be written or published, is equally liable for all the damage consequent on that publication.   They are all deemed publishers.   Thus, if the libel appear in a newspaper, the proprietor, the editor, the printer and the author are all liable to be sued, either separately or together."   *Newell on Defamation*, 382.   It is very clear from the testimony in the record that the appellant, the World Newspaper, has offered no evidence which in any manner tends to relieve it from responsibility as the publisher of the libel in question ; nor is it contended that the statement in the declaration is not libelous *per se*.

The chief controversy now remaining to be considered relates solely to the liability of the Fraternal Alliance as the instigator of the publication of the libel in question. The Alliance seeks to escape liability in this case by confusing the name of the plaintiff with that of some other person by the name of Mallalieu, but the testimony in the record is sufficiently clear and conclusive as to have enabled the jury to reach a fair and intelligent verdict.   There is certainly nothing in the testimony of the plaintiff calculated to mislead the jury.   He proved that his name was Mallalieu and that he was connected with the Metropolitan Insurance Company, a rival company with the Alliance and employed by the Metropolitan as its agent at the time of the publication of the libel.   He further testified that, after the publication, he was stopped on the street by a gentleman, who was a policy-holder in the Metropolitan Company, and who accosted him with the remark, " I see you are a liar and the public is warned not to trust you."   If the Alliance wished to place at rest this alleged unfair inference as to the identity of the plaintiff, it was its privilege to have called the author of the libel as a witness, when he

could have solved the mystery, if any there be, of the identity of the plaintiff; it would then have been a question for the jury to find, as instructed by the prayer, whether or not the words set forth in the declaration were published of and concerning the plaintiff. *Bernstein* v. *Hobelman, Trustee,* 70 Md. 40 ; *Smith* v. *Henderson,* 9 Mees. & W. 801; *Odgers on Libel and Slander,* 129. It is contended by the Fraternal Alliance that it was necessary for the plaintiff to prove, in order to maintain this action, that the libel was authorized by the officers of the Alliance or that it was subsequently ratified by them. It may be true that neither Hardesty nor Unverzagt composed or caused the libel to be published—that question is not before us and we forbear commenting upon it. But it is clearly shown by the testimony in the record that the libelous statements emanated from the Alliance, its publication was paid for by the Alliance, and the Alliance never repudiated the publication of the libel or any part thereof. We have examined with care the testimony contained in the record, and we entertain not the slightest doubt as to its proper construction and meaning. The question of the ratification of an unauthorized act of an agent of a corporation is not of sufficient consequence or importance in this case as to require consideration and determination. At all events it has been given in our view of this case as much consideration in the prayers of the appellants and of the appellee as it was entitled to. We have not given to the several prayers separate consideration as we did not deem it necessary. We have, however, examined them with care and find no error in the disposition which the Court below has made of them. It was entirely unnecessary and improper to have encumbered the record of this appeal with the motion for a new trial and certain affidavits filed in the Court below, which could not be made to serve any useful purpose in the hearing in this Court. It follows from what we have said that the judgment below must be affirmed.

*Judgment affirmed with costs.*

(Decided January 5th, 1898).